IN THE UNITED STATES DISTRICT COURT,

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Eve Nevada, LLC and Voltage Holdings, LLC | Case No.: 2:21-cv-251 |
| Plaintiffs, | **SECOND AMENDED COMPLAINT; EXHIBIT 1-2; DECLARATION OF EMILY MORGAN; DEMAND FOR JURY TRIAL** |
| vs. | |
| Michelle Derbyshire (formerly Doe aka fbkf@sroff.com), | **(1) DIRECT COPYRIGHT INFRINGEMENT** |
| Defendant. | **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |
| | **(3) DMCA VIOLATIONS** |

## SECOND AMENDED COMPLAINT

Plaintiff Eve Nevada, LLC and Voltage Holdings, LLC ("Plaintiffs"), by and through their

counsel, brings this Second Amended Complaint against Defendant Michelle Derbyshire

(formerly Doe aka fbkf@sroff.com) ("Defendant") and alleges as follows:

### I.    NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17

U.S.C. §§ 101, et seq. (the "Copyright Act").

First Amended Complaint 1

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.     The Plaintiffs allege that Defendant is liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1202.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Defendant resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that her acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over her.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant resides or resided, and therefore can or could be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant or Defendant's agents resides and can be found in this District.

6.     As discussed in detail below, Defendant has accessed the Internet repeatedly from Internet Protocol addresses in this District (as recently as February 1, 2021) to make racist remarks about an African American attorney for rightsholders (referring to him as a "Negro"), proclaim her support for movie piracy ("itsfun2steal") and engage in wide scale piracy.

### III.     PARTIES

### A.   The Plaintiffs

7.     Plaintiff Eve Nevada, LLC is a limited liability company registered under the laws

of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures such as *Wind River*, *The Murder of Nicole Brown Simpson* and *The Hurt Locker*.

8.      Plaintiff Voltage Holdings, LLC is a Nevada limited liability company with its principal place of business at 116 N. Robertson Blvd, Suite 200, Los Angeles, CA 90048

9.      Plaintiffs are the owner of the Work *Ava* featuring Jessica Chastain, Colin Farrell, John Malkovich and Common, which tells the story of a deadly assassin specializing in high profile hits who is forced to fight for her own survival when a job goes wrong.

**B.   The Defendant**

10.      Previously identified as Defendant Doe aka fbkf@sroff.com, Defendant Michelle Derbyshire is an adult individual residing in Vancouver, Washington.

11.      Defendant is an admitted and proud user of the notorious piracy website referred to as YTS or YIFY ("YTS website").

12.      The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

13.      The YTS website is known for distributing torrent files of copyright protected motion pictures.

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047



14.     Defendant has been assigned Internet Protocol ("IP") address 71.193.144.236 from her Internet Service Provider ("ISP") Comcast.

15.     Public information shows that IP address 71.193.144.236 is in Vancouver, Washington.

16.     Plaintiffs were granted early discovery to request identifying information from Comcast regarding the owner of IP address 71.193.144.236, which was identified as Michelle Derbyshire of Vancouver, WA.

17.     Defendant previously accessed the Internet from IP address 68.186.24.19 assigned by the ISP Charter.

18.     On Sept. 22, 2020, Defendant used the Harry S Cornhole username to state "Blacks have always been an interesting breed" from IP address 68.186.24.19.

19.     Public information shows that IP address 68.186.24.19 is in Lincoln, Oregon.

20.     Plaintiffs were granted early discovery to request identifying information from Charter Communications, Inc. regarding the owner of IP address 68.186.24.19, which was identified as William Holt.

21.     William Holt is the owner of a stand-alone vacation rental home located in Lincoln,

First Amended Complaint 4

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

Oregon, which is operated by the management company Meredith Management.

22.     On 9/22/2020, the same day that "Harry S Cornhole" commented from IP address 68.186.24.19, William Holt and Meredith Management confirmed that the vacation rental home was rented by Michelle Derbyshire. *See* Decl. of Emily Morgan.

23.     Defendant uses one or more Virtual Private Network ("VPN") services to try to conceal her illicit activities.

24.     A VPN is a type of Internet Service that provides access to the Internet.   A conventional ISP such as Charter or Comcast will assign its subscriber an IP address and log the subscriber's activities on the Internet while using the assigned IP address.   In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic.

25.     A VPN subscriber accesses the VPN service from her normal Internet service so that she is assigned an IP address from the VPN provider.   If the VPN connection is temporarily disconnected, the subscriber can lose the benefit of anonymity because the IP address of the conventional ISP which is likely logged will be exposed.

26.     Some VPN services include a so-called "Kill Switch" so that the subscriber device is automatically disconnected from the Internet until the VPN connection is restored when the VPN connection is temporarily disconnected.

27.     VPN providers usually obtain their IP addresses, colocation and support from large data center providers such as Datacamp Limited, Digital Ocean and Total Server Solutions, LLC.

28.     Defendant used IP addresses that were assigned to a VPN service from data centers such as 212.102.46.66 from Datacamp Limited and 198.8.80.88 from Total Server Solutions, LLC

First Amended Complaint 5

as discussed below.

29.     Public information shows that IP addresses 212.102.46.66 and 198.8.80.88 are associated with servers in Seattle, Washington.

### GeoIP2 City Results

| IP Address | Country Code | Location | Network | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization |
|---|---|---|---|---|---|---|---|---|
| 198.8.80.88 | US | Seattle, Washington, United States, North America | 198.8.80.0/24 | 98168 | 47.4902, -122.3004 | 1000 | Performive | Performive |
| 212.102.46.66 | US | Seattle, Washington, United States, North America | 212.102.46.0/25 | 98121 | 47.6144, -122.3447 | 1000 | Datacamp Limited | Datacamp Limited |

30.     Defendant frequently comments on articles using the Disqus platform under the username "lookinthemirrorloser" with a public display username "Harry S Cornhole" in the comment sections of the Portland, Oregon based online newspaper Willamette Week (https://www.wweek.com/) and the online publication TorrentFreak (https://www.torrentfreak.com).

31.     Defendant registered for the username Harry S Cornhole using the email address "fbkf@sroff.com" on or about September 6, 2020.

32.     Defendant chose an image of a Caucasian hand making the "ok" hand gesture as the icon representing her username.



**Harry S Cornhole**
· 6 months ago

33.     The Anti-Defamation League states that the hand gesture chosen by Defendant as the icon for her username is a common expression indicating support for white supremacy.  *See* https://www.adl.org/education/references/hate-symbols/okay-hand-gesture [last accessed on Feb. 26, 2021].

First Amended Complaint 6

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

34.     Upon information and belief, Defendant purposely chose this username and profile icon to show her disdain and racial animus towards an African American attorney named Kerry S. Culpepper who represents copyright holders.

35.     On Feb. 2, 2021, Defendant used the Harry S Cornhole username to state "Kerry Culpepper the Hawaiian Negro…" from IP address 167.99.109.10 (of Digital Ocean).



Harry S Cornhole · 5 days ago
Kerry Culpepper the Hawaiian Negro. Can't be hard to spot.
∧ | ∨ · Reply · Share›

36.     On Jan. 27, 2021, Defendant used the Harry S Cornhole username to state, "Culpepper appears to be wanting an early funeral. Folks will murder for just about anything these days" from IP address 71.193.144.236 (of the ISP Comcast).

37.     Defendant uses the Harry S Cornhole username to make comments criticizing the Black Lives Matter ("BLM") movement and people of African descent in general.

38.     On Sept. 6, 2020, Defendant used the Harry S Cornhole username to refer to people of the BLM as "A Potpourri of Scum" from IP address 45.43.14.76 (of the ISP Tier.Net Technologies LLC).

Harry S Cornhole · 6 months ago
You do realize that Homeless BLM ANTIFA etc, are all the same to normal people. A Potpourri of Scum.
1 ∧ | ∨ 3 · Reply · Share›

39.     On that same day and from the same IP address, Defendant used the Harry S Cornhole username to state, "A normal person thinks homeless antifa and blm are all the same.

First Amended Complaint 7

Gross!".

40.     On that same day and from the same IP address, Defendant used the Harry S Cornhole username to state disdain towards the Portland, "Ya' Think? I moved far away from that S Hole."

41.     On that same day and from the same IP address, Defendant used the Harry S Cornhole username to state, "Bring your children with you downtown. When you start killing those homeless, blm, and antifa losers, you will have a great excuse for why you did it. Truck will become a lawnmower."

42.     On Sept. 22, 2020, Defendant used the Harry S Cornhole username to state "Blacks have always been an interesting breed" from IP address 68.186.24.19 (of Charter).

43.     Defendant uses the Harry S Cornhole username to make comments supporting movie piracy and use of the YTS website.

44.     In a comment on the TorrentFreak website, Defendant used the Harry S Cornhole username to make comments, "itsfun2steal" and "Seedboxes are fine..." on Jan. 25, 2021 from IP address 71.193.144.236 (of Comcast).

45.     A seedbox is a high-bandwidth remote server for uploading and downloading of digital files from peer-to-peer networks such as BitTorrent.

46.     In a comment to a TorrentFreak article discussing litigation against the piracy website 1337 and its users, Defendant used the Harry S Cornhole username to make a comment bragging about her use of the 1337 website and the YTS website "safely" by using a VPN "killswitch" on Jan. 27, 2021 from IP address 198.8.80.88 (of the ISP Performive and data center Total Server Solutions, LLC).  *See* https://torrentfreak.com/movie-piracy-lawsuit-target-alleged-1337x-users-210126/ [last accessed on Feb. 26, 2021].

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047



Harry S Cornhole · a month ago

LOL! It's 2021... Who doesn't know how to do this stuff safely? get a vpn with a killswitch!

oh yeah, yify baaaaaby!

2 ∧ | ∨ · Reply · Share ›

47.     In a comment to a torrent article discussing litigation against YTS users, Defendant used the Harry S Cornhole username to make a comment bragging about this use of the YTS website on Feb. 1, 2021 from IP address 167.99.109.10 (of Digital Ocean).   *See* https://torrentfreak.com/more-yts-users-settle-piracy-claims-after-legal-pressure/ [last accessed on Feb. 26, 2021].



Harry S Cornhole · 5 days ago

Is that the site i regularly use that always tells me to use a VPN? Yeah...

∧ | ∨ · Reply · Share ›

48.     From many of the same IP addresses from which Defendant bragged that she used a VPN to regularly use or made racist comments, Defendant downloaded and shared copies of Plaintiffs' Work and those of affiliates of Plaintiffs.

49.     Defendant commented from IP address 45.43.14.76 on 9/6/2020.  For example, Defendant stated, "Bring your children with you downtown. When you start killing those homeless, blm, and antifa losers, you will have a great excuse for why you did it. Truck will become a lawnmower."

50.     Defendant downloaded, reproduced and shared copies of the Work *Ava* under file name "Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX]" multiple times on 9/11/2020 from IP address 45.43.14.76.  *See* Exhibit "1".

51.     Defendant downloaded, reproduced and shared copies of the Work *The Murder Of Nicole Brown Simpson* under file name The Murder Of Nicole Brown Simpson (2019) [WEBRip]

First Amended Complaint 9

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

[1080p] [YTS.LT] multiple times between 5/9/2020 and 6/17/2020 from IP address 45.43.14.76. *See* Exhibit "1".

52.     Defendant downloaded, reproduced and shared copies of the motion picture *Wild Horses* under file name Wild Horses (2015) [BluRay] [720p] [YTS.LT] multiple times between 6/3/2020 and 6/4/2020 from IP address 45.43.14.76.  *See* Exhibit "1".

53.     Defendant commented from IP address 212.103.49.148 multiple times on 9/6/2020.  For example, Defendant stated, "Every time these losers die to a bullet, the Taxpayer saves money."

54.     Defendant downloaded, reproduced and shared copies of the motion picture *Wind River* under file name Wind River (2017) [YTS.AG] multiple times on 11/1/2020 from IP address 212.103.49.148.  *See* Exhibit "1".

55.     Defendant commented from IP address 192.111.134.213 on 9/9/2021.   For example, Defendant stated, "Anybody can murder another person at least once before getting caught."

56.     Defendant downloaded, reproduced and shared copies of the Work *Ava* under file names "Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX]" and "Ava (2020) [720p] [WEBRip] [YTS.MX]" multiple times between 9/2/2020 and on 9/13/2020 from IP address 192.111.134.213. *See* Exhibit "1".

57.     Defendant commented from IP address 198.8.80.88 on 1/27/2021.  For example, Defendant stated, "…oh yeah, yify baaaaaby!"  YIFY is another name for the YTS website.

58.     Defendant downloaded, reproduced and shared copies of the Work *Ava* under file names "Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX]", "Ava (2020) [720p] [BluRay] [YTS.MX]",  and  "Ava.2020.1080p.BluRay.H264.AAC-RARBG"  multiple  times  between

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

11/13/2020 and 1/13/2021 from IP address 198.8.80.88. *See* Exhibit "1".

59.    Defendant commented from IP address 154.16.168.185 on 1/28/2021.   For example, Defendant stated, "Kerry is admitted to practice…"

60.    Defendant downloaded, reproduced and shared copies of the Work *Ava* under file names "Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX]" and "Ava (2020) [720p] [WEBRip] [YTS.MX]" multiple times between 11/16/2020 and 1/13/2021 from IP address 154.16.168.185. *See* Exhibit "1".

61.    Defendant commented from IP address 45.43.14.96 on 1/29/2021.  For example, Defendant stated, "No Bing.  https://gibiru.com/" as her recommendation as an alternative search engine to assist in pirating content since Bing was removing search results.

62.    Defendant downloaded, reproduced and shared copies of the Work *Wind River* under file name Wind River (2017) [1080p] [YTS.AG] multiple times on 1/26/2021 from IP address 45.43.14.96. *See* Exhibit "1".

63.    Defendant commented from IP address 212.102.46.66 on 2/2/2021.  For example, Defendant stated, "When she gets hit by a bus, i'll buy a round for the house!"

64.    Defendant downloaded, reproduced and shared copies of the Work *Wind River* under file name Wind.River.2017.1080p.BluRay.H264.AAC-RARBG multiple times on 1/22/2021-1/23/2021 from IP address 212.102.46.66. *See* Exhibit "1".

65.    Plaintiffs' agent sent at least a first notice styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("infringement notice") to the ISP associated with the IP addresses used by Defendant requesting the ISP stop their subscriber (Defendant) from continuing to infringe the Work via BitTorrent protocol.

66.    Upon information and belief, the ISP forwarded the Notice to Defendant and

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

1    Defendant received it.

2        67.     The ISPs such as Performive, Tier.Net, Charter and Comcast provided the Internet

3    service for Defendant at the time of the above comments.  The data service providers such as

4    Digital Ocean provided the IP addresses the VPN provider provided to Defendant.

5

6        68.     Because Defendant resides in a household with other adult individuals, Plaintiffs

7    were granted a third-party subpoena for a deposition on Defendant Michelle Derbyshire to

8    determine the true identity of the responsible party.

9        69.     Plaintiffs served Michelle Derbyshire on 7/22/2021 to testify at the deposition

10   along with the witness fee.

11

12       70.     Defendant did not attend the deposition and did not return the witness fee.

13                        **IV.     FACTUAL BACKGROUND**

14       *A. The Plaintiffs Own the Copyrights to the Work*

15

16       71.     The Plaintiffs are the owner of the copyright registrations for the screenplay

17   (PAu003943693) and the motion picture (PA0002235557) in the Work *Ava*.

18       72.     The Work was published as a motion picture and is currently offered for sale in

19   commerce.

20

21       73.     Defendant had notice of Plaintiffs' rights through at least the credits indicated in

22   the content of the motion picture which bore proper copyright notices.

23       74.     Defendant also had notice of Plaintiffs' rights through general publication and

24   advertising associated with the motion pictures, and packaging and copies, each of which bore a

25   proper copyright notice.

26

27       75.     The YTS website provides torrent files, many including the name "YTS" in their

28   file names, that can be used by a BitTorrent protocol client application ("BitTorrent Client") to

---

First Amended Complaint 12

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

download copyright protected content, including Plaintiffs' Work.

76.     Defendant used the YTS website to download the torrent files associated with Plaintiffs' Work.

77.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since 2018.



**B. Defendant Used BitTorrent To Infringe the Plaintiffs' Copyrights.**

78.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

79.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

**1. Defendant installed a BitTorrent Client onto her Computer.**

80.     A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

81.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

82.     Defendant installed a BitTorrent Client onto her computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

83.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client she installed onto her computer.

84.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

85.     The initial seeder included the wording "YTS" in the title of the torrent files in order to enhance a reputation for the quality of her torrent files and attract users to the YTS website.

86.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

87.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

88.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

89.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the

First Amended Complaint 14

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

90.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

91.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

92.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

93.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.   There are numerous torrent websites including the YTS website.

94.     Defendant went to torrent sites including the YTS website to upload and download Plaintiffs' copyrighted Work.

### 4. The Peer Identification

95.     The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

96.     Upon information and belief, Defendant was assigned a Peer ID by their BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

97.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent

First Amended Complaint 15

is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

98.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

99.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

100.    In this way, all of the peers and seeders are working together in what is called a "swarm."

101.    Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

102.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

103.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**6. The Plaintiffs' Computer Investigator Identified the Defendant's IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Work.**

First Amended Complaint 16

104.    The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiffs' copyrighted Work.

105.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

106.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

107.    The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit "1" accurately reflect what is contained in the evidence logs.

108.    The logged information in Exhibit "1" show that Defendant copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

109.    The Defendant's computer used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

110.    MEU's agent analyzed each BitTorrent "piece" of the Work *Ava* distributed by the IP addresses listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

111.    MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

***C. Defendant knew the Copyright Management Information included in the illegitimate file copies she distributed had been removed or altered without the authority of Plaintiffs***

First Amended Complaint 17

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

112.    A legitimate file copy of the Work includes copyright management information indicating the title.

113.    The initial seeder of the infringing file copies of Plaintiffs' Work added the word "YTS" to the file titles to brand the quality of piracy files she released and attract further traffic to the YTS website.

114.    The word YTS is not included in the file title of legitimate copies or streams of the Plaintiffs' Work.  The initial seeders of the Work altered the title to falsely include the words "YTS" as CMI.

115.    The file copies Defendant distributed to other peers in the Swarm included this altered CMI in the file title.

116.    Defendant knew that the YTS website from which she obtained the torrent files was distributing illegal copies of the Work.

117.    Defendant knew that the file copies that she distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

118.    Defendant knew that the CMI in the title she distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

119.    Defendant knew that YTS was not a licensed distributor of Plaintiffs' Work. Indeed, the YTS website includes a warning to this effect.

120.    Defendant knew that the CMI that included YTS in the file names was false.

121.    Defendant knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Work when they distributed the false CMI, altered CMI, or the Work including the false or altered CMI.

122.    Namely, Defendant knew that other recipients would see the file titles and use the

First Amended Complaint 18

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

altered CMI to go to the website such as YTS from where the torrent files originated to obtained

unlicensed copies of the Work.

123.    By providing the altered CMI to others via the VPN service, Defendant induced,

enabled, and facilitated further infringements of the Work.

**D. Defendant has repeatedly admitted and even bragged of being a user of the YTS**

**website.**

124.    Defendant has made numerous comments on the Disqus platform admitting her

use of the YTS website.

125.    Defendant has made numerous comments on the Disqus platform admitting that

she uses a VPN to conceal her piracy activities.

126.    Defendant has made at least one comments on the Disqus platform admitting that

she uses a kill switch as a further protection to conceal her piracy activities.

127.    MEU obtained capture records from the same IP addresses from where Defendant

made these comments showing substantial piracy of Plaintiffs' Work and those of others.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

128.    Plaintiffs re-allege and incorporates by reference the allegations contained in each

of the foregoing paragraphs.

129.    Plaintiffs are the copyright owners of the Work which each contains an original

work of authorship.

130.    Defendant copied the constituent elements of the Work.

131.    Defendant also publicly performed and displayed the copyright protected Work.

132.    By participating in the BitTorrent swarms with others, Defendant distributed at

least a piece of the copyright protected Work to others.

First Amended Complaint 19

133.    Plaintiffs did not authorize, permit, or provide consent to Defendant to copy, reproduce, redistribute, perform, or display its Work.

134.    As a result of the foregoing, Defendant violated the Plaintiffs' exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

135.    As a result of the foregoing, Defendant violated the Plaintiffs' exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

136.    As a result of the foregoing, Defendant violated the Plaintiffs' exclusive rights to perform the Work publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

137.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

138.    The Plaintiffs have suffered damages that were proximately caused by Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

139.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

140.    By participating in the BitTorrent swarms with others, Defendant induced, caused or materially contributed to the infringing conduct of others.

141.    Plaintiffs did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of others.

142.    Defendant knew or should have known that the other BitTorrent users in a swarm with her were directly infringing the Plaintiffs' copyrighted Work by copying constituent

First Amended Complaint 20

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047

1
2
elements of the registered Work that are original.  Indeed, Defendant directly participated in and therefore materially contributed to others' infringing activities.

3
4
5
143.    The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

6
7
8
9
10
11
12
144.    By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producers of the Work from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

13
14
**VIII. THIRD CLAIM FOR RELIEF**
**(Digital Millennium Copyright Act Violations)**

15
16
145.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

17
18
19
20
21
146.    Defendant knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work *Ava,* distributed copyright management information ("CMI") that falsely included the wording "YTS" and "RARBG" in violation of 17 U.S.C. § 1202(a)(2).

22
23
24
25
26
27
147.    Defendant, without the authority of Plaintiffs, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" and "RARBG" without the authority of the Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work *Ava* in violation of 17 U.S.C. § 1202(b)(2).

28

First Amended Complaint 21

148.    Defendant, without the authority of Plaintiffs, or the law, distributed Plaintiffs' Copyright protected Work *Ava* knowing that the CMI had been removed or altered to include the wording "YTS" and "RARBG", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Work in violation of 17 U.S.C. § 1202(b)(3).

149.    Particularly, the Defendant knew that the CMI in the file names of the pieces had been altered to include the wording "YTS" or "RARBG".

150.    Particularly, the Defendant distributed the file names that included CMI that had been altered to include the wording "YTS" or "RARBG".

151.    Defendant knew that the wording "YTS" and "RARBG" originated from the notorious movie piracy websites YTS and RARBG for which she actively uses.

152.    Defendant's acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

153.    Plaintiffs are entitled to an injunction to prevent Defendant from engaging in further violations of 17 U.S.C. § 1202.

154.    Plaintiffs are entitled to recover from Defendant the actual damages suffered by Plaintiffs and any profits Defendant has obtained as a result of her wrongful acts that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendant has realized by their violations of 17 U.S.C. § 1202.

155.    Plaintiffs are entitled to elect to recover from Defendant statutory damages for their violations of 17 U.S.C. § 1202.

156.    Plaintiffs are further entitled to costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

First Amended Complaint 22

1

WHEREFORE, the Plaintiffs respectfully requests that this Court:

2

(A) permanently enjoin Defendant from continuing to directly infringe and contribute to

3

infringement of the Plaintiffs' copyrighted Work;

4

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service

5

provider providing service for Defendant which she used to infringe Plaintiffs' Work immediately

6

7

cease said service;

8

(C) award the Plaintiffs actual damages and Defendant's profits in such amount as may be

9

found; alternatively, at Plaintiffs' election, for maximum statutory damages of $150,000 pursuant

10

to 17 U.S.C.  § 504-(a) and (c) against Defendant;

11

12

(D) award the Plaintiffs their actual damages from the DMCA violations and Defendant's

13

profits in such amount as may be found; or, in the alternative, at Plaintiffs' election, for maximum

14

statutory damages of $25,000 for DMCA violations pursuant to 17 U.S.C. § 1203(c) for violations

15

of 17 U.S.C. § 1202 against Defendant;

16

17

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. §

18

505 against Defendant; and

19

(G) grant the Plaintiffs any and all other and further relief that this Court deems just and

20

proper.

21

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

22

DATED: Kailua-Kona, Hawaii, December 9, 2021.

23

24

/s/ *Joshua Lee*
Joshua Lee, WSA No. 57358

25

CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204

26

Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047

27

Facsimile:    (202) 204-5181
E-Mail:        joshua.lee@culpepperip.com

28

First Amended Complaint 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First Amended Complaint 24

Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI
Telephone (808) 464-4047