1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

EVE NEVADA, LLC, *et al.*

                    Plaintiffs,

12          v.

13   MICHELLE DERBYSHIRE,

14                    Defendant.

15

CASE NO. 21-0251-LK

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT

16              **I.      INTRODUCTION**

17       This matter comes before the Court on a Motion for Default Judgment and Attorney's

18   Fees filed by Plaintiffs Eve Nevada, LLC and Voltage Holdings, LLC (collectively, "Plaintiffs").

19   Dkt. No. 33. Having reviewed the Motion, all supporting materials, and the relevant portions of

20   the record, the Court GRANTS in part and DENIES in part the Motion for Default Judgment as

21   set forth below.

22              **II.      BACKGROUND**

23       Plaintiffs filed a complaint before this Court in February 2021 alleging that Defendant

24   had engaged in copyright infringement by sharing without permission a movie they own called

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT - 1

Ava (the "Work"), which stars several well-known actors. Dkt. No. 1 at ¶ 9. When they filed their complaint, Plaintiffs did not know Defendant's identity, and the Court permitted Plaintiffs to conduct early discovery to ascertain that information. Dkt. No. 6, 10, 12. Thereafter, Plaintiffs filed an amended complaint identifying Defendant as Michelle Derbyshire, Dkt. No. 15, and then a second amended complaint, which is now the operative complaint, Dkt. No. 27 (the "SAC").

In the SAC, Plaintiffs allege that Defendant illegally downloaded and shared copies of Plaintiffs' Work on multiple occasions on a notorious piracy website without their permission. SAC at ¶¶ 48-60, 94.[1] Specifically, Plaintiffs allege that Defendant downloaded, uploaded, and shared infringing copies of the Work using a BitTorrent swarm. *Id.* at ¶¶ 101, 108, 110, 111, 115-23, 130-32, 140-42, 146-51. Defendant used various IP addresses in this infringing activity starting at least as early as September 2020. *Id.* at ¶¶ 50 (alleging that Defendant downloaded and shared *Ava* "multiple times" on 9/11/2020 from IP address 45.43.14.76), 56 ("multiple times" between 9/2/2020 and 9/13/2020 from IP address 192.111.134.213), 58 ("multiple times" between 11/13/2020 and 1/13/2021 from IP address 198.8.80.88), 60 ("multiple times" between 11/16/2020 and 1/13/2021 from IP address 154.16.168.185). On a website, Defendant commented "itsfun2steal" and bragged about her abilities to pirate and conceal her activities. *Id.* at ¶¶ 44, 46-57. Defendant also directed specific comments at an attorney who has previously represented the Plaintiffs in other lawsuits, including racist comments and a comment stating that the attorney "appears to be wanting an early funeral. Folks will murder for just about anything these days." *See, e.g.*, *id.* at ¶¶ 35, 36.

In their complaint, Plaintiffs asserted claims against Defendant for willful direct and contributory copyright infringement pursuant to 17 U.S.C. § 101, *et seq.*; and for violations of

---

[1] Plaintiffs also allege that Defendant has illegally downloaded and shared other movies that are owned by an "affiliate" of Voltage Holdings, LLC, Dkt. No. 27 at ¶ 7, but do not allege that they have rights in these works.

the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a)-(b). SAC at ¶¶ 128-156.

Defendant has not appeared or otherwise defended against this action even though she has been served. Dkt. No. 32; *see also* Dkt. Nos. 28, 33-3 at ¶¶ 3-11. On January 10, 2022, the Clerk entered an order of Default against Defendant, Dkt. No. 32, and then Plaintiffs moved for default judgment, Dkt. No. 33.

Plaintiffs assert that Defendant's failure to answer or otherwise defend the Second Amended Complaint entitles Plaintiffs to default judgment against her. Dkt. No. 33. In their motion for default judgment, Plaintiffs seek statutory damages in the amount of $30,000 for Defendant's infringements of the Work pursuant to 17 U.S.C. § 504(c), statutory damages in the amount of $25,000 for Defendant's CMI violations of the DMCA pursuant to 17 U.S.C. §1203(c)(3)(B), and attorneys' fees in the amount of $16,425. Dkt. No. 33 at 4-6. Plaintiffs further request injunctive relief barring Defendant from directly or contributorily infringing the Work in the future (Dkt. No 27 at 22-23; Dkt. No. 33 at 5) and ordering Defendant to "immediately delete the derogatory and inflammatory comments on public forums suggesting [Plaintiffs' attorney] should be murdered to prevent hindering [sic] protection of the copyright in [Plaintiffs'] Work" (Dkt. No. 33 at 5).

### III.    JURISDICTION

This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101, *et. seq.*, (the Copyright Act), 28 U.S.C. § 1331, and 28 U.S.C. § 1338. The Court also has personal jurisdiction over Defendant based on Plaintiffs' allegation that Defendant "resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that her acts would cause injury in this jurisdiction." Dkt. 27 at ¶ 4. Plaintiffs properly served Defendant on October 7, 2021, pursuant to this Court's order granting Plaintiffs' motion to serve by mail. Dkt. Nos. 20,

1   33-3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(c) and 28 U.S.C. § 1400(a)

2   because a substantial part of the events or omissions giving rise to the claims occurred in this

3   district and Defendant resides or resided, and therefore can or could be found, in this district. *See*

4   Dkt. 27 at ¶ 5.

## IV.   LEGAL STANDARD

6        Default judgment may be entered for the plaintiff if the defendant has defaulted by failing

7   to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation

8   be made certain[.]" Fed. R. Civ. P. 55(a), (b). The court has discretion to grant or deny a motion

9   for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir.

10   1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits

11   if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may

12   consider the following factors in deciding whether to grant a motion for default judgment

13   (collectively, "*Eitel* factors"):

14       (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's
    substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

15       stake in the action[,] (5) the possibility of a dispute concerning material facts[,]
    (6) whether the default was due to excusable neglect, and (7) the strong policy

16       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

17   *Id.* at 1471-72 (citation omitted).

18        On default, "the factual allegations of the complaint, except those relating to the amount

19   of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th

20   Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However,

21   the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285

22   F.3d 899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and

23   the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*

24   *of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## V.    DISCUSSION

**A.  Plaintiffs Are Entitled to Default Judgment**

The Court has considered the *Eitel* factors and finds that default judgment is appropriate in this case for the reasons laid out below.

   1.   The possibility of prejudice to the Plaintiffs

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. *See, e.g., PepsiCo, Inc., v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiffs filed their suit in February 2021, and Defendant has failed to respond or otherwise put forth a defense in this action, including failing to attend her duly noted deposition. SAC at ¶¶ 68-70. Plaintiffs are prejudiced because they are left without a legal remedy absent entry of default judgment. Therefore, the first factor weighs in favor of entering default judgment. *See Eve Nevada, LLC v. Does 1-16*, No. C20-00475-DKW-KJM, 2021 WL 2934597, at *2 (D. Haw. June 21, 2021) (hereinafter "*Riley*"), *report and recommendation adopted sub nom. Eve Nevada, LLC v. Riley*, No. C20-00475 DKW-KJM, 2021 WL 2933100 (D. Haw. July 12, 2021); *Cell Film Holdings, LLC v. Hawkins*, No. C16-1091-RSL, 2019 WL 1200535, at *2 (W.D. Wash. Mar. 14, 2019).

   2.   The merits of Plaintiffs' substantive claims and the sufficiency of the complaint

In evaluating the second and third factors, the Court considers the merits of Plaintiffs' claims and whether the allegations in the complaint are sufficient to state a claim on which Plaintiffs may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

To establish a claim of direct copyright infringement, a "plaintiff must show ownership of the copyright and copying by the defendant." *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1066-67 (9th Cir. 2013) (quotation marks omitted). To prevail on a claim for contributory copyright infringement, a plaintiff must demonstrate that the defendant (1) knew, or

had reason to know, of the infringing conduct and (2) induced, caused, or materially contributed to the infringing conduct. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). "[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). To prove "willfulness" under the Copyright Act, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (cleaned up).

The allegations in Plaintiffs' SAC, which the Court accepts as true upon default, establish that Plaintiffs own a valid registered copyright in the Work and that Defendant willfully copied constituent elements of the Work that are original. *See, e.g., Feist Pubs., Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991); *Riley*, 2021 WL 2934597, at *2; SAC at ¶¶ 71-77, 94, 101, 104-23, 129-38. Plaintiffs' allegations also establish that Defendant materially and willfully contributed to infringement of the Work by installing and operating a BitTorrent Client onto her computer and using a seedbox[2] to share copies of the Work in a BitTorrent swarm with other users. *See, e.g., Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007); *Riley*, 2021 WL 2934597, at *3; *see* SAC at ¶¶ 71-77, 97-111, 117-23, 140-44.

Plaintiffs have also established that Defendant has violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq*. The DMCA prohibits intentionally removing or altering copyright management information ("CMI") or distributing CMI knowing that it has been removed or altered "knowing, or . . . having reasonable grounds to know that it

---

[2] A seedbox is a high-bandwidth remote server for uploading and downloading of digital files from peer-to-peer networks such as BitTorrent. SAC at ¶ 45.

will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b). CMI is defined as information, including the "name of, and other identifying information about, the author of a work," or the "name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright," which is "conveyed in connection with copies . . . or displays of a work, including in digital form." 17 U.S.C. § 1202(c)(2), (3). Defendant knew that the YTS website from which she obtained the torrent files was not a licensed distributor of Plaintiffs' Work and was distributing illegal copies of the Work, knew that the file copies she was distributing included the unauthorized altered and false CMI "YTS," and knew that the copies she distributed would induce, enable, facilitate, or conceal infringement of the Work. *See* SAC at ¶¶ 115-23, 146-52.

Finally, Plaintiffs' allegations sufficiently tie Defendant to the IP addresses associated with the infringing activity. Specifically, Defendant posted comments online under the username "Harry S Cornhole" using the same IP addresses that downloaded and shared the Work. *See* SAC at ¶¶ 29, 38, 46, 49, 50, 55-60; *see also* Dkt. No. 27-1. Defendant used the same screen name to post comments while using an IP address directly traced to her. SAC at ¶ 22; Dkt. No. 27-3.

Thus, Plaintiffs' allegations in the SAC state meritorious claims for willful direct and contributory copyright infringement and for violations of the DMCA. The second and third *Eitel* factors therefore weigh in favor of a default judgment.

### 3.   The sum of money at stake in the action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. This requires the court to assess whether the recovery sought is proportional to the harm caused by defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *See Vogel v. Rite Aid Corp.*, 992 F.

Supp. 2d 998, 1012 (C.D. Cal. 2014). For the reasons laid out elsewhere in this Order, the Court

finds that Defendant willfully infringed Plaintiffs' copyrights, but that the damages Plaintiffs

seek ($55,000 in statutory damages, plus attorney fees of $16,425) are not appropriate. The Court

awards $4,500 in statutory damages and $9,843.75 in attorneys' fees, and finds that this sum is

proportional to Defendant's conduct. *See* Section B.1 and .2, *infra*. The total sum of money at

stake, then, is $14,343.75, and this factor weighs in favor of default judgment.

4.   The possibility of a dispute concerning material facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered,

well-pleaded factual allegations in the operative complaint are taken as true except for the

allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

5.   Whether the default was due to excusable neglect

Turning to the sixth factor, the record contains no indication that Defendant's default was

due to excusable neglect. Defendant has been served and given sufficient notice of this action.

Dkt. No. 32; SAC at ¶¶ 68-70. Although the record does not show that Plaintiffs served

Defendant with their motion for default judgment, they were not required to do so since

Defendant has not appeared in this action. LCR 55(b)(4). Because there is no evidence of

excusable neglect, this *Eitel* factor favors the entry of a default judgment.

6.   The strong policy underlying the Federal Rules of Civil Procedure favoring decisions
on the merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever

reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates

that this preference, standing alone, is not dispositive" because Rule 55 allows a court to issue a

default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177

(cleaned up). Accordingly, although the court is cognizant of the policy in favor of decisions on

the merits, that policy does not, by itself, preclude the entry of default judgment especially where, as here, Defendant has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment. *See Riley*, 2021 WL 2934597, at *3.

In sum, having considered the *Eitel* factors, the Court finds that they weigh in favor of entry of default judgment in favor of Plaintiffs.

**B.  Plaintiffs Are Entitled to Damages**

Having found that entry of default judgment is warranted, the Court turns to the issue of damages. The Court does not presume the truth of any factual allegations related to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

A party may elect to receive statutory, rather than actual, damages for infringement of registered copyrights. 17 U.S.C. § 504(c)(1). The Copyright Act sets a $750 minimum and a $30,000 maximum award of statutory damages for copyright infringement, and the maximum award can be increased to as much as $150,000 where the infringement was willful. 17 U.S.C. § 504(c)(1)-(2). Under the DMCA, "a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). "If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" in the statute. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (cleaned up).

In the several years that courts have analyzed the just amount of statutory damages to award in BitTorrent cases, six relevant factors have emerged:

> (1) whether the defendant was the original provider of the infringed content to its distribution network; (2) whether, and how much, the defendant profited or saved in connection with the infringement; (3) the plaintiff's actual losses; (4) whether the plaintiff's request would result in a "windfall"; (5) the deterrent effect of

statutory damages; and (6) the defendant's willfulness and intent in infringing the plaintiff's protected content.

*LHF Prods., Inc. v. Gonzales*, No. C17-00103-DN, 2020 WL 6323425, at *9 (D. Utah Oct. 28, 2020) (cleaned up). Here, Plaintiffs seek $30,000 in statutory damages for Defendant's infringements of the Work pursuant to 17 U.S.C. § 504(c), and $25,000 in statutory damages for Defendant's CMI violations of the DMCA. Dkt. No. 33 at 4-5.

Such awards are rare in BitTorrent cases. This Court could not find any analogous case where a court awarded statutory damages of over $50,000, and neither could Plaintiffs. Even in the non-BitTorrent cases Plaintiffs cite in their motion, the statutory damages awards fall far short of what Plaintiffs seek here. *See, e.g.*, *Sadowski v. Doe*, No. C18-01703-MC, Dkt. 18 at 8 (D. Or. Oct. 30, 2019) (awarding the statutory minimum of $2,500 per DMCA violation); *Glynn v. Cigar Store, Inc.*, No. C18-00031-MMC, Dkt. No. 25 at *11 (N.D. Cal. Jun. 27, 2018) (awarding $3,500 for one DMCA violation for which plaintiff sought the statutory maximum of $25,000). Most courts award the statutory minimum for claims of infringement via BitTorrent.[3] In unique cases, courts have awarded more, but not by much. *See, e.g.*, *Riley,* 2021 WL 2934597, at *4 (awarding $1,500 for violation of the Copyright Act and $2,500 for violation of the DMCA where defendant distributed *Ava* from three separate IP addresses over four days); *Crim. Prods.,*

---

[3] *See, e.g., LHF Prods., Inc. v. Gonzales*, No. C17-00103-DN, 2020 WL 6323425, at *9 (D. Utah Oct. 28, 2020); *Strike 3 Holdings, LLC v. Doe*, No. C18-01173-TSH, 2019 WL 1277561, at *5 (N.D. Cal. Mar. 20, 2019); *Headhunter, LLC v. Waterman*, No. C17-0987-JLR, 2018 WL 4963616, at *3 (W.D. Wash. Oct. 15, 2018); *ME2 Prods., Inc. v. Pagaduan*, No. C17-130-SOM-KJM, 2017 WL 8786920, at *7 (D. Haw. Dec. 29, 2017), *report and recommendation adopted as modified*, 2018 WL 1069463 (D. Haw. Feb. 27, 2018); *Cook Prods., LLC v. Szerlip*, No. C16-00637 HG-KSC, 2017 WL 4883220, at *2 (D. Haw. Oct. 30, 2017); *Cook Prods., LLC v. Stewart*, No. C17-00034 ACK-RLP, 2017 WL 4797513, at *8 (D. Haw. Oct. 24, 2017); *Cell Film Holdings, LLC v. Newcomb*, No. C16-01387-SB, 2017 WL 5615171, at *5 (D. Or. Oct. 12, 2017), *report and recommendation adopted*, No. C16-1387-SB, 2017 WL 5615164 (D. Or. Nov. 21, 2017); *Automata Prods., Inc. v. Bertinetti*, No. 3:16-CV-1080-AC, 2017 WL 980551, at *3 (D. Or. Mar. 14, 2017); *Voltage Pictures, LLC v. Martinez*, No. C15-00002-AC, 2015 WL 4772856, at *4 (D. Or. Aug. 11, 2015); *Elf-Man, LLC v. C.G. Chinque Albright*, No. C13-0115-TOR, 2014 WL 5543845, at *7 (E.D. Wash. Oct. 31, 2014); *Thompsons Film, LLC v. Athias*, No. C13-0126-TOR, 2014 WL 5543900, at *9 (E.D. Wash. Oct. 31, 2014); *Dallas Buyers Club, LLC v. Bui*, No. C14-1926-RAJ, 2016 WL 1242089, at *4 (W.D. Wash. Mar. 30, 2016).

*Inc. v. Turchin*, No. C16-1695-AC, 2017 WL 979099, at *3 (D. Or. Mar. 14, 2017) (awarding $2,500 for violation of the Copyright Act where defendant had stipulated in a prior infringement lawsuit that he willfully downloaded the copyrighted work using BitTorrent with the intent to cause harm); *Clear Skies Nevada, LLC v. Fritter*, No. C16-1364-AC, 2017 WL 980555, at *3 (D. Or. Mar. 14, 2017) (awarding $1,500 for violation of the Copyright Act where defendant continued to use the BitTorrent protocol after receiving notice of the lawsuit); *Millennium Films, Inc. v. Robinson*, No. C16-04718-SVW-E, 2017 WL 8221952, at *5-6 (C.D. Cal. Feb. 15, 2017) (awarding $3,000 for each of three violations where defendant distributed plaintiffs' motion pictures over 1,000 times over several months and continued his infringing behavior after receiving a DMCA takedown notice); *Automata Prods., Inc. v. Spicher*, No. C16-0797-AC, 2016 WL 4621198, at *3 (D. Or. Sept. 6, 2016) (awarding $1,500 where defendant continued to download pirated content "after being notified that use of the torrent protocol to download copyright-protected material is illegal and after being served with this lawsuit").

The Court finds that the unique facts of this case merit statutory damages of $2,000 for Defendant's violation of the Copyright Act and $2,500 for Defendant's violation of the DMCA. Application of the relevant factors to the circumstances of this case supports this award.

1. <u>Whether Defendant was the original provider of the infringed content; Defendant's savings and Plaintiffs' losses in connection with the infringement; and whether the Plaintiffs' request would result in a "windfall"</u>

Although Plaintiffs do not allege that Defendant was an original provider of a seed file for *Ava*, Defendant attempted to aid others in pirating content by posting comments on how to do so "safely" in the comments sections of news articles covering piracy lawsuits (including lawsuits filed by a law firm that represented Plaintiffs in this case). And, while Defendant likely saved less than $30 in rental costs by pirating *Ava*, numerous other individuals likewise saved rental costs thanks to Defendant's contributions as a swarm member. *See Malibu Media, LLC v.*

*Doe*, No. C19-519 (LO/TCB), 2019 WL 7476684, at *5 (E.D. Va. Dec. 9, 2019), *report and recommendation adopted*, 2020 WL 50448 (E.D. Va. Jan. 2, 2020) ("Because of BitTorrent technology and how it allows users to easily share digital files with each other, infringement of Plaintiff's works can continue unabated in exponential fashion.") (cleaned up). Due to the "unabated" infringement of Plaintiffs' works during time periods when Defendant was actively sharing *Ava* via swarms, Plaintiffs' actual losses are unclear. Defendant shared *Ava* "multiple times" between September 2, 2020 and September 13, 2020, and "multiple times" between November 13, 2020 and January 13, 2021. SAC at ¶¶ 50, 56, 58, 60. This volume of sharing activity appears to eclipse that in *Riley*, where the court found that a $4,000 award of statutory damages was merited against a defendant who distributed *Ava* via BitTorrent over roughly four days. 2021 WL 2934597, at *4. Considering these facts, an award of $4,500 in statutory damages will not result in a windfall to the Plaintiffs here.

   2. <u>The deterrent effect of statutory damages and Defendant's willfulness and intent in infringing Plaintiffs' protected content</u>

   The Court also finds that $4,500 in statutory damages carries a sufficient deterrent effect on Defendant's future infringing activities, as well as on other potential infringers. It is consistent with amounts awarded in the analogous cases where defendants' willful infringement justified a departure from the statutory minimum. Like the defendants in *Clear Skies Nevada*, *Millennium Films*, and *Spicher*, Defendant continued her infringing behavior despite knowing it was illegal. Beyond that, she offered guidance to others on how to "safely" pirate content.

   Specifically, on January 27, 2021, in response to an online article discussing several copyright infringement lawsuits brought against users of popular torrent sites who were identified through their IP addresses, Defendant commented:

> LOL! It's 2021... Who doesn't know how to do this stuff safely? get a vpn with a killswitch!

1    oh yeah, yify baaaaaby!

2    Derbyshire (posting as "Harry S Cornhole"), Jan. 27, 2021 Comment to *Movie Piracy Lawsuit*

3    *Target Alleged 1337x Users*, TorrentFreak (Jan. 26, 2021), https://torrentfreak.com/movie-

4    piracy-lawsuit-target-alleged-1337x-users-210126/. Instead of curtailing her infringement

5    activity after seeing concrete examples of the potential consequences, Defendant continued to

6    pirate content and advise others on how to do so. On January 29, 2021, Defendant posted a

7    comment advising "No Bing. https://gibiru.com/" as an alternative search engine to assist in

8    pirating content. SAC at ¶ 61. Three days later, in response to news that several YTS users had

9    settled a copyright lawsuit, Defendant commented, "Is that the site i regularly use that always

10   tells me to use a VPN? Yeah…" SAC ¶ 47; Derbyshire (posting as "Harry S Cornhole"), Jan. 31,

11   2021 Comment to *More YTS Users Settle Piracy Claims After More Legal Pressure*,

12   TorrentFreak (Jan. 30, 2021), https://torrentfreak.com/more-yts-users-settle-piracy-claims-after-

13   legal-pressure/. Defendant posted several other comments on the same article, including one

14   stating that she had "been watching [YTS movie releases] for years." *Id.*

15          Ultimately, considering the relevant factors collectively, along with all the circumstances

16   of this case, an award of $4,500 in statutory damages against Defendant is just. This award

17   adequately serves the compensatory and punitive purposes of statutory damages to sanction

18   Defendant and vindicates the statutory policy of discouraging future infringement.

19   **C.  Plaintiffs Are Entitled to Certain Injunctive Relief**

20          Plaintiffs request a permanent injunction against Defendant "barring [her] from directly

21   and contributorily infringing Plaintiffs' copyrights in the Work."[4] Dkt. No. 33 at 5.

22

23   [4] Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The relief Plaintiffs seek in their proposed order deviates from their pleadings in three respects. First, their proposed order includes injunctive relief ordering the Defendant to

24   "immediately and permanently destroy all files relating to, and copies of, Plaintiffs' copyright-protected Work downloaded or distributed, by them in violation of Plaintiffs' exclusive rights, as well as all such files in her

The Copyright Act allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The DCMA also allows courts to grant "temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." 17 U.S.C. § 1203(b)(1).

Despite that authority, "an injunction [does not] automatically follow[] a determination that a copyright has been infringed." *eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 392 (2006). "An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (cleaned up). To be entitled to a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay*, 547 U.S. at 391. Irreparable harm is not presumed even where infringement has been found. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *see also Hardy Life, LLC v. Nervous Tattoo, Inc.*, No. C08-3524 PA (CTX), 2008 WL 11338698,

---

possession, custody, or control from which additional copies may be reproduced." Dkt. No 33-4 at 2. The Second Amended Complaint does not request destruction of files. Second, the proposed order would enjoin Defendant from a broader range of activity than that requested in the Second Amended Complaint. In the proposed order, Plaintiffs seek to prohibit Defendant "from infringing Plaintiffs' copyrights in the future or distributing file copies of the Work with false or altered copyright management information." *Id.* In Plaintiffs' Second Amended Complaint, they ask the Court only to bar Defendant from "continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Work." Dkt. No. 27 at 23. Third, the proposed order would mandate deletion of certain of Defendant's comments on public forums. Dkt. 33-4 at 2. No such relief is sought in the Second Amended Complaint. Consistent with Rule 54(c), the Court declines to entertain relief sought in Plaintiffs' motion and proposed order that exceeds what is demanded in their pleadings. *See Pioche Mines Consolidated, Inc.*, 333 F.2d 257, 272 (9th Cir. 1964) (district court erred by awarding relief that was not requested in the "prayer of the complaint"); *Aminov v. EC Commodities Corp.*, No. C16-4800-AMD-SMG, 2018 WL 542245, at *2 (E.D.N.Y. Jan. 24, 2018) (adopting magistrate judge's recommendation that plaintiff's claim be denied because he raised it for the first time in his motion for default judgment); *Tragni v. Souther Elec. Inc.*, No. C09-32-JF-RS, 2009 WL 3052635, at *3 (N.D. Cal. Sept. 22, 2009). The Court also notes that the relief sought in Plaintiffs' motion deviates from that sought in their proposed order in the first two respects listed above.

at *3 (C.D. Cal. Aug. 4, 2008) (noting that "*eBay* rejected a presumption of irreparable harm when assessing the issuance of a permanent injunction"). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

Courts routinely find that permanent injunctions like the one requested here are warranted in default judgment cases involving copyright infringement via BitTorrent.[5] As in those cases, the Court finds that the *eBay* factors favor a permanent injunction here.

First, absent injunctive relief, Plaintiffs will likely suffer irreparable harm for which monetary damages would be inadequate. As Plaintiffs explain, the manner in which the BitTorrent protocol operates leads to very rapid distribution of files to many users. SAC at ¶¶ 97-103; *see also Sianturi*, 2017 WL 3328082, at *6 ("The nature of the BitTorrent system means the Plaintiff's works can continue to circulate the internet at a fast rate and reach many users."). Defendant's use of BitTorrent to infringe Plaintiffs' Work does not appear to be an isolated incident; rather, her infringing activity appears to extend over several years and include at least three other copyrighted titles. SAC at ¶¶ 50-54, 56, 58, 60, 62, 64; Dkt. No. 27-1. Defendant has also expressed strong hostility towards Plaintiffs' efforts to protect their copyrights, going so far as to suggest that the death of one of Plaintiffs' attorneys would be desirable. SAC at ¶¶ 36, 63.

Furthermore, Defendant's refusal to participate in this action does not reassure the Court that she has stopped using BitTorrent to infringe Plaintiffs' Work or will voluntarily do so in the future. *See Hunter Killer Prods., Inc. v. Zarlish*, No. C19-00168-LEK-KJM, 2020 WL 3980117,

---

[5] *See, e.g.*, *Strike 3 Holdings, LLC v. Poluk*, No. C20-2146-TLN-CKD, 2021 WL 5321824, at *5 (E.D. Cal. Nov. 16, 2021); *Hawkins*, 2019 WL 1200535, at *2; *Bodyguard Prods., Inc. v. Baker*, No. C17-1648-RSM, 2018 WL 6413203, at *3 (W.D. Wash. Dec. 6, 2018); *Malibu Media, LLC v. Sianturi*, No. C16-01059-AWI-SKO, 2017 WL 3328082, at *6 (E.D. Cal. Aug. 4, 2017); *LHF Prods., Inc. v. Does 1-19*, No. C16-1175-RSM, 2017 WL 615197, at *3 (W.D. Wash. Feb. 15, 2017); *Elf-Man, LLC*, 2014 WL 5543845, at *7.

at *5 (D. Haw. June 15, 2020), *report and recommendation adopted*, 2020 WL 3977607 (D. Haw. July 14, 2020) (defendant's refusal to participate in the case provided "no reassurance that Defendant . . . will stop making software applications available to the public through his website infringing on Plaintiffs' copyrighted Works"); *Hearst Holdings, Inc. v. Kim*, No. C07-4642-GAF-JWJX, 2008 WL 11336137, at *7 (C.D. Cal. Aug. 17, 2008) (defendants' "failure to respond in any way to this action does not reassure the Court that [they] have stopped infringing Plaintiffs' copyrights, which is yet another reason why granting a permanent injunction to enjoin them from further infringement is appropriate"); *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006) ("Defendant's failure to respond to the complaint likely suggests Defendant does not take seriously the illegality of the infringing activity.").

Defendant will not suffer a hardship if the requested injunction is entered against her. Plaintiffs' injunction seeks to stop Defendant from continuing to download and distribute its Work without Plaintiffs' permission. Since Defendant never had a right to do this in the first place, she suffers no hardship by entry of a permanent injunction.

In addition, the balance of hardships also favors Plaintiffs because Defendant would suffer no injury other than refraining from her infringing conduct. *See Pagaduan*, 2017 WL 8786920, at *6. The injunction does not prohibit Defendant from obtaining access to expressive works – it simply requires her to do so lawfully. On the other hand, Plaintiffs' hardship absent an injunction is significant. Specifically, Plaintiffs risk further distribution of the Work by Defendant using BitTorrent swarms. *See Strike 3 Holdings, LLC*, 2021 WL 5321824, at *5. Plaintiffs would have to trace numerous IP addresses as distribution and infringement continues.

Finally, preventing further copyright infringement undoubtedly serves the public interest. Plaintiffs' statutory right to enforce their copyrights outweighs Defendant's interest in unlawfully distributing the content for free. Indeed, "[t]he goal of the Copyright Act is 'to

promote creativity for the public good.'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). "[P]irating and distributing dozens of copies of [a copyrighted] film—does not 'promote the Progress of Science and useful Arts'"; instead, it is "the digital equivalent of standing outside the neighborhood Redbox—or Blockbuster Video, for fans of history—and giving away copies of the movie for free." *Id.*

Considering the foregoing factors, a permanent injunction against Defendant is appropriate and warranted. The Court GRANTS Plaintiffs' request for an injunction prohibiting Defendant from directly or contributorily infringing Plaintiffs' copyrighted Work.

**D.  Plaintiffs Are Entitled to Attorney's Fees**

The Copyright Act authorizes district courts to award "a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. The decision regarding whether to award attorney's fees is in the court's discretion. *See id.* The Supreme Court has provided a nonexclusive list of factors for courts to consider in making a fee determination: (1) whether the lawsuit was frivolous; (2) motivation; (3) objective legal or factual unreasonableness; and (4) the need to advance the considerations of compensation and deterrence. *Glacier Films*, 896 F.3d at 1037 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The Ninth Circuit has added factors that "'may be considered' and 'need not all be met': the degree of success obtained in the litigation, the purposes of the Copyright Act, and (3) 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Id.* (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). "[D]istrict courts should accord substantial weight to the reasonableness of the losing party's legal and factual arguments." *Id.* (cleaned up).

Here, Plaintiffs have succeeded on their copyright infringement claims in a lawsuit that was filed with the reasonable, non-frivolous goal of enforcing their intellectual property rights against an infringer. For the reasons discussed in *Glacier Films*, an attorney fee award would advance considerations of compensation and deterrence and further the purposes of the Copyright Act. *Id.* at 1041. Finally, because Defendant has not participated in this action, the Court does not have any information regarding whether she is impecunious or what her arguments or motivation might have been, other than her apparent disdain for copyright holders' enforcement of their rights. Based on the above factors, Plaintiffs are entitled to attorney's fees.

To determine the total amount claimed, Plaintiffs used the "lodestar" method, which involves multiplying the number of hours reasonably expended on the claim or motion by a reasonable hourly rate. *See, e.g., Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). In calculating the lodestar, the Court should consider any of the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). In this case, the relevant *Kerr* factors include: the time and labor required, the customary fee, the amount involved, and the results obtained. *Id.*

The Court finds that counsel's hourly rate of $225 per hour is reasonable for the work performed and for the Seattle market. *Id.*; *see also Millennium Funding, Inc. v. Doe*, No. C21-282-RDA-TCB, 2021 WL 5217018, at *15 (E.D. Va. Oct. 15, 2021) (approving 36.25 hours of work billed by the same attorney at $250 per hour); *Curtis*, 33 F. Supp. 3d at 1222 (approving rates for similar work in 2014 at rates between $200-$320 per hour); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.").

With respect to the time and labor required and the results obtained, the Court recognizes that Plaintiffs were required to conduct discovery about Defendant's identity, which she had

concealed, file motions related to that effort, and pursue default and default judgment when

Defendant failed to defend, and Plaintiffs achieved success in those motions. Dkt. Nos. 5, 6, 9,

10, 11, 12, 32. However, the Court finds that the time billed on this matter is excessive for three

reasons.

First, in reviewing other pleadings filed by Plaintiffs, it appears that large portions of the

complaints filed in this case were drawn from prior work completed by Plaintiffs, and that

numerous identical allegations were used in the complaints in the *Surfshark* case. *See Millennium*

*Funding, Inc., et al. v. Surfshark Ltd. et al.*, C21-00643, Dkt. No. 12 (E.D. Va.); *see, e.g.*, *Santa*

*Files Prods. LLC et al v. Dabney et al.*, No. C20-01883-SRB, Dkt. No. 1 (D. Ariz.); *see also*

*Bodyguard Prods., Inc. v. Doe 1*, No. C18-00276-JAO-RLP, 2019 WL 826447, at *5 (D. Haw.

Feb. 21, 2019) ("Plaintiff's counsel has appeared and continues to appear in many actions in this

district and it is widely recognized that he submits nearly identical pleadings and motions in

these actions."). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is

not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (cleaned up).

Because attorney Joshua Lee block bills, it is not possible to determine how much time was spent

on complaint drafting on certain days. Dkt. 33-1 at 2-4. The Court determines that ten hours of

Mr. Lee's time working on complaints should be reduced from his hour request.

Second, the overall amount billed in this matter is disproportionate to the matter's

complexity, especially considering the amounts Plaintiffs have recovered in recent analogous

cases.[6] The Court reduces the excessive time spent (1) on the motion for default judgment from

---

[6] *Compare AMBI Distribution Corp et al v. Doe*, No. C21-01961-RBJ-NYW, Dkt. No. 52 (D. Colo. Jan. 24, 2022) (approving 70.25 hours and $22,079.50 in attorneys' fees in case involving motions for temporary restraining orders, supplemental briefing, and a hearing); *Millennium Funding, Inc. v. Doe*, 2021 WL 5217018, at *15 (approving roughly 110 hours and $35,319.74 in attorneys' fees in a contested case involving $3.675 million in statutory damages for copyright infringement, motions for temporary restraining orders, a motion to dismiss, settlements with certain defendants and related motions, and a hearing); *with Riley*, 2021 WL 2934597, at *5 (D. Haw. June 21, 2021) (approving 51.65 hours of work and $5,961.15 in fees as part of a default judgment where defendant

eight to four hours; (2) on the motions for early discovery from 10 to four hours; and (3) on research regarding alternate service methods from five hours to one hour.

Third, Mr. Lee has billed for clerical tasks such as filing, which are usually part of the overhead charged in an attorney's hourly rate and are not recoverable. *Neil v. Comm'r of Social Sec.*, 495 Fed. Appx. 845, 847 (9th Cir. 2012); *Snell v. N. Thurston Sch. Dist.*, No. C13-5786-RBL, 2015 WL 8621913, at *3 (W.D. Wash. Dec. 14, 2015). Again, because Mr. Lee block bills, it is not possible to determine how much time was spent on clerical tasks versus compensable activities on certain days. The Court determines that approximately 5.5 hours of Mr. Lee's time appear attributable to tasks that are clerical in nature, and reduces this aspect of his hour request accordingly.

In sum, the Court finds that Plaintiffs have performed 43.75 compensable hours of work on this matter at the reasonable rate of $225 per hour, and therefore awards Plaintiffs $9,843.75 in fees.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court GRANTS in part and DENIES in part the motion for default judgment. Default judgment shall enter in favor of Plaintiffs and against Defendant, as follows:

1.      Award Plaintiffs $2,000 in statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c);

2.      Award Plaintiffs $2,500 in statutory damages pursuant to 17 U.S.C.

---

distributed *Ava* from three separate IP addresses over roughly four days); *Hunter Killer Prods.*, 2020 WL 3980117, at *10 (approving 28.5 hours and $7,125 in fees as part of a default judgment where the defendant promoted a software application with pirated content to the public as a legitimate means for viewing copyrighted content for free); *Stewart*, 2017 WL 4797513, at *1, 7 (approving four hours and $1,000 in fees as part of a default judgment in a case involving infringement of 12 titles that were "consistently downloaded and/or distributed").

§ 1203(c)(3)(B);

3.      Award Plaintiffs a total of $9,843.75 for attorneys' fees.

4.      Award Plaintiffs a permanent injunction barring Defendant Derbyshire from directly or contributorily infringing Plaintiffs' copyrights in the Work.

Dated this 31st day of January, 2022.

*Lauren King*

Lauren King
United States District Judge